UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSSYE I. JIRAU,

    Plaintiff,

v.                               CASE NO: 8:11-cv-73-T-33MAP

CAMDEN DEVELOPMENT, INC.,

    Defendant.

_____/

**ORDER**

This cause comes before the Court pursuant to Defendant Camden Development, Inc.'s Motion for Summary Judgment (Doc. # 40) and supporting Memorandum of Law (Doc. # 41), filed on August 12, 2011. Plaintiff Jossye I. Jirau filed a response (Doc. # 51) on September 2, 2011. Camden filed a reply (Doc. # 58) on September 19, 2011. For the reasons that follow, the Court grants the Motion.

**I.**    **Background**

Jirau filed a three-count complaint against Camden on January 10, 2011, alleging unlawful retaliation under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2615 (Count I), violation of the Pregnancy Discrimination Act (PDA), 42 U.S.C. § 2000e(k) and § 2000e-2(a)(1) (Count II), and gender discrimination in violation of Florida's Civil Rights Act

(FCRA), Fla. Stat. § 760.01, et seq. (Count III). (Doc. # 1). Jirau began her employment with Camden in about May 2002, and was terminated in March 2010. (Id. at ¶¶ 10, 19). She contends that she performed her work satisfactorily and that Camden had not formally disciplined her prior to her termination. (Id. at ¶¶ 11, 18).

Jirau became pregnant with her third child in August 2009. (Id. at ¶ 12). Thereafter, she informed her supervisor, Katrina Huppman, of her pregnancy and her intent to return to work after maternity leave. (Id. at ¶ 13). Jirau claims that Camden terminated her in retaliation for requesting or expressing the need for FMLA benefits. (Id. at ¶ 27). She argues that Camden believed that her pregnancy would affect her ability to do her job and terminated her to avoid having to allow her to take time off under the FMLA. (Id. at ¶¶ 42-43). She further asserts that she was subjected to "harassment, intimidation, false accusations and discrimination" as a result of her pregnancy and that she was terminated because of her gender. (Id. at ¶¶ 44, 52). She also claims that Camden falsely told the Florida Agency for Workforce Innovation that she was terminated for "misconduct" and because she failed to obtain permission or notify her supervisor that she was going to be absent in order to attend

2

a jury trial related to an auto accident lawsuit. (Id. at ¶ 21).

Camden states that Jirau became pregnant with her first two children, and took FMLA leave, during her employment. (Doc. # 41 at 2-4). Camden further asserts that Jirau regularly received semiannual pay increases and was promoted multiple times. (Id.) Jirau was also granted FMLA leave during October 2009 due to complications during her third pregnancy. (Id. at 4). However, Huppman states that Jirau's four annual performance reviews prior to February 2010 reflected that "she did not meet expectations or only partially met expectations in attendance and punctuality." (Doc. # 44-9 at 30). Camden claims that Jirau's attendance and punctuality declined over time, leading to counseling during her annual performance review in February 2010. (Doc. # 41 at 6).

Camden has strict policies regarding absenteeism and tardiness, requiring an employee to "call in" at least one hour prior to scheduled report time on each day of absence or tardiness. (Id. at 5). The policy provides that if an employee is absent for two consecutive days without notifying his or her supervisor, the employee is presumed to have quit without notice. (Id.). Camden asserts that Jirau was voluntarily terminated for failing to call in for two consecutive days

when she was absent attending the trial involving the auto accident lawsuit. (Id.).

## II. **Legal Standard**

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See id. When a

moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. See id.

**III. Analysis**

    **A.    Family and Medical Leave Act**

The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of the birth of a son or daughter of the employee and in order to care for such son or daughter." 29 U.S.C. § 2612(a)(1). A plaintiff may assert two types of claims under the FMLA: interference and retaliation. Strickland v. Water Works & Sewer Bd., 239 F.3d 1199, 1206 (11th Cir. 2001). Jirau asserts a claim for FMLA retaliation in Count I of her Complaint. In a retaliation claim, "an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." Id. (citing 29 U.S.C. § 2615(a)(1)&(2); 29 C.F.R. § 825.220(c)).

Jirau also asserts that Camden discharged her to prevent her from exercising her right to FMLA leave. (Doc. # 1 at ¶ 28; Doc. # 51 at 7). This suggests an interference claim. "'Interfering with' the exercise of an employee's rights would

5

include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." Lowery v. Strength, 356 Fed. Appx. 332, 334 (11th Cir. 2009) (citing 29 C.F.R. § 825.220(b)).

### 1. **FMLA Retaliation Claim**

A prima facie case of retaliation under the FMLA requires a showing that (1) the employee engaged in statutorily protected conduct, (2) the employee suffered an adverse employment action, and (3) there is a causal connection between the two. Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1234 (11th Cir. 2010). "This can be shown through either direct or indirect evidence, the latter of which requires applying the burden-shifting framework" of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Connor v. Sun Trust Bank, 546 F. Supp. 2d 1360, 1372 (N.D. Ga. 2008). Jirau has proffered both direct and indirect evidence.

Direct evidence "reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004) (internal quotations and citations omitted). To serve as direct evidence of retaliation, an employer's statement must prove discrimination without any inference or presumption. Connor, 546 F. Supp. 2d

at 1373. "The Eleventh Circuit has said that this means 'only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination.'" Id. (citing Wilson, 376 F.3d at 1086). "If the statement merely suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence." Id.

If a plaintiff claiming FMLA retaliation relies upon circumstantial evidence, the burden-shifting framework applies. "Under that framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination." Combs v. Plantation Patterns, 106 F.3d 1519, 1527-28 (11th Cir. 1997). The burden then shifts to the defendant, who must articulate a legitimate and non-discriminatory reason for its action. Id. at 1528. If the defendant satisfies its burden of production, the burden shifts back to the plaintiff, who must then prove that the defendant's reason is a pretext for discrimination. Id.

### a. Direct Evidence

Jirau offers the affidavit of Michelle Ketterman as direct evidence of FMLA retaliation. (Doc. # 51 at 9). In her affidavit, Ketterman asserts that Huppman discriminated against Ketterman during her pregnancy in 2007 by, among other

7

things, making rude gestures and comments and refusing to accommodate medical work restrictions. (Doc. # 52-1 at ¶ 6). Furthermore, Ketterman states that "Huppman announced and represented that there was 'no more FMLA leave'; 'no one else can get pregnant.'" (Id. at ¶ 7).

The Court finds that Ketterman's affidavit does not meet the Eleventh Circuit's definition of direct evidence. Huppman could not control whether another employee got pregnant, and her alleged statement regarding "no more FMLA leave" is controverted by the fact that Jirau herself was approved for FMLA leave in October 2009. Although the statements allow an inference of discrimination, a fact-finder could also reasonably infer that the statements were made in jest or hyperbole. See Connor, 546 F. Supp. 2d at 1373 ("The only way for [defendant's] statements to constitute direct evidence would be if she said, for example, 'I fired the plaintiff because she took FMLA leave.'").

Even if the statements met the definition of direct evidence, they do not correlate to Jirau's adverse employment action. The statements were made no later than September 2008, far removed in time from Jirau's termination in March 2010. See Mann v. Austin, Nichols & Co., No. 98-1883-CV-T-24(C), 1999 WL 1292880, at *2 (M.D. Fla. Nov. 23, 1999) (discussing

8

the temporal proximity requirement for direct evidence). Thus, Jirau has not shown direct evidence of discrimination and must rely upon circumstantial evidence to establish a prima facie case of retaliation.

### b. Indirect Evidence/Prima Facie Case

"Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." Brammer v. Winter, No. 3:06-cv-16-J-32MCR, 2007 WL 4365643, at *3 (M.D. Fla. Dec. 12, 2007) (quoting Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)). Nonetheless, Camden argues that Jirau has failed to establish a prima facie case for retaliation.

First, Camden argues that Jirau was not engaged in statutorily protected conduct. In her deposition, Jirau states that she never formally requested FMLA leave following the birth of her third child. She does recall that when she informed Huppman that she was pregnant, she also told her she would take leave after the baby was born. The Court finds that this is sufficient to put Camden on notice that Jirau would need FMLA leave. See Lowery, 356 Fed. Appx. at 333 (verbal notice sufficient to make the employer aware of need for FMLA leave).

Even if Jirau was engaged in statutorily protected activity, Camden argues that she has not established causation due to the length of time between her statement to Huppman and her termination. Camden's argument has merit.

The Supreme Court has stated that temporal proximity between an employer's knowledge of protected activity and an adverse employment action may be sufficient evidence of a causal connection if the temporal proximity is "very close." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001). The Eleventh Circuit has held that an adverse employment action three months after protected activity is not sufficiently proximate to show causation. Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006).

In this case, there was a lapse of at least six months between Jirau's request for FMLA benefits and her termination. There was a lapse of five months between Jirau's October 2009 FMLA leave and her termination. The Court finds that the timing between Jirau's protected activity and her termination is insufficiently proximate to establish the causation prong of the prima facie case.

Insofar as Jirau asserts that she was terminated in retaliation of her upcoming FMLA leave (Doc. # 51 at 7), such

circumstantial evidence does not establish causation.[1] "[W]hen an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation." Drago, 453 F.3d at 1308.

### c. Evidence of Pretext

Jirau has not established a prima facie case of FMLA retaliation because she has not shown a causal connection between her statutorily protected conduct and the adverse employment action she suffered. For the purposes of this Order, however, the Court will assume that Jirau established her prima facie case. Camden must proffer a legitimate, non-retaliatory reason for the adverse employment action it took. Camden asserts that Jirau was voluntarily terminated for violating the company's "no call/no show" policy when she was absent for two days without calling in.

Jirau bears the ultimate burden of proving by a preponderance of the evidence that the reason Camden provided is a mere pretext for prohibited, retaliatory conduct. Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998). To

---

[1] Jirau's FMLA interference claim is addressed below.

show that the employer's reasons were pretextual, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Combs, 106 F.3d at 1538.

Jirau attempts to show pretext by disputing Camden's version of the events leading up to her termination. Camden asserts that Jirau was terminated for not calling in when she was absent on March 18-19, 2010. (Doc. # 41 at 6). Jirau contends that Huppman knew Jirau would be out the entire week of March 15, asked Jirau to write the planned absence on the work calendar, and sent an email to Human Resources stating that Jirau would be out during that time. (Doc. # 51 at 8-9). Jirau admits in her deposition that she told Huppman she might return to work March 18th, but contends that she presumed she was scheduled to be off those days. (Doc. # 53-1 at 45; Doc. # 53-2 at 2).

These arguments are immaterial. "A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that

12

reason head on and rebut it." <u>Chapman v. AI Transport</u>, 229 F.3d 1012, 1030 (11th Cir. 2000). "Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions. No matter . . . how mistaken the firm's managers, the [court] does not interfere. Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior." <u>Id.</u> (internal quotations and citations omitted).

The Court finds that Camden's proffered reason for terminating Jirau might motivate a reasonable employer. Camden had an express "no call/no show" policy, and Jirau admits that she did not call in on the dates in question. Although Jirau contends that she should not have been expected to call in, the Court finds this insufficient to establish pretext.

Jirau also suggests pretext by arguing that she was a valuable employee who received an overall rating of "exceeds expectations" in annual performance reviews. (Doc. # 51 at 3). She downplays issues with tardiness and absenteeism recorded in her annual performance reviews by noting that she was given regular raises and "a significant promotion." (<u>Id.</u>) Jirau's self-assessment as a good employee does not establish pretext. <u>See</u> <u>Webb v. R & B Holding Co., Inc.</u>, 992 F. Supp. 1382, 1387 (S.D. Fla. 1998) ("The employee's perception of himself is not

13

relevant. It is the perception of the decision maker which is relevant. . . . The fact that an employee disagrees with an employer's evaluation of him does not prove pretext.").

The Court finds that Jirau has failed to provide direct evidence of retaliation, to establish a prima facie case of retaliation or to establish that Camden's proffered reason for terminating her is pretextual. The Court therefore grants summary judgment with regard to the FMLA retaliation claim.

### 2. **FMLA Interference Claim**

Jirau did not expressly plead a claim for FMLA interference. In her Complaint, however, she asserts that Camden discharged her to prevent her from taking her upcoming FMLA leave. (Doc. # 1 at ¶ 28). The Court will thus examine her arguments in light of an FMLA interference claim.

"To state a claim of interference with a substantive right, an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." Strickland, 239 F.3d at 1206-07. "Alternatively, an employee may demonstrate that the employer interfered with the FMLA benefit." Lowery, 356 Fed. Appx. at 334. While a retaliation claim requires the plaintiff to show that the employer's actions "were motivated by an impermissible retaliatory or

discriminatory animus," the employer's intent is immaterial in an interference claim. Strickland, 239 F.3d at 1207.

Jirau does not assert that Camden refused to authorize FMLA leave. Instead, she argues that "[i]t is clear from the evidence that Huppman does not want pregnant Bookkeepers taking any leave, including FMLA leave." (Doc. # 51 at 7). Because bookkeepers play an "important role" in the apartment community, she argues that a bookkeeper on FMLA leave "would pose a significant burden on the community, one that Huppman could not tolerate." (Id. at 8). As support, she asserts that the two bookkeepers who became pregnant while working under Huppman's supervision were "forced out" of employment. (Id.).

However, Jirau has submitted no evidence to support this allegation or establish a connection between her future leave and her termination. See Crossdale v. Mt. Sinai Med. Ctr. of Fla., Inc., No. 09-23395-CIV, 2010 WL 3743803, at *3 (S.D. Fla. Sept. 23, 2010) ("There simply is no logical connection between Plaintiff's potential future leave and her termination."). Like the plaintiff in Crossdale, Jirau took FMLA leave prior to her termination and, when she returned, was reinstated to the same position with no loss of pay or benefits. "The mere possibility that [Defendant] may have decided that Plaintiff's medical condition may result in

15

future FMLA absences and then terminated her for that reason, is but speculation, and '[s]peculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.'" Id. (quoting Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005)). The Court finds Jirau's argument to be purely speculative and grants summary judgment with regard to her FMLA interference claim.

**B.   Pregnancy Discrimination Act**

The Pregnancy Discrimination Act provides that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k). "The analysis required for a pregnancy discrimination claim is the same type of analysis used in other Title VII sex discrimination suits." Slater v. Energy Servs. Grp. Int'l, Inc., No. 10-14939, 2011 WL 4425306, at *1 (11th Cir. Sept. 23, 2011) (quoting Armindo v. Padlocker, Inc., 209 F.3d 1319, 1320 (11th Cir. 2000)). As outlined above, the Court finds that Jirau has not shown direct evidence of discrimination. Thus, the Court once again uses

16

the McDonnell Douglas burden-shifting framework, although the elements of the prima facie case differ somewhat.

> A plaintiff may establish a prima facie case of discrimination by showing that (1) she is a member of a group protected by Title VII; (2) she was qualified for the position or benefit sought; (3) she suffered an adverse effect on her employment, and (4) she suffered from a differential application of work or disciplinary rules.

Id. at *2. Generally, a plaintiff must show that similarly situated employees engaged in similar conduct are treated differently. Id. However, "a plaintiff alleging pregnancy discrimination need not identify specific non-pregnant individuals treated differently from her, if the employer violated its own policy in terminating her." Id. (internal quotation and citation omitted).

Jirau was pregnant at the time of her discharge, qualified for her position and FMLA benefits, and suffered an adverse employment action. Thus, the first three elements of the prima facie case are satisfied. However, Jirau has not established that she suffered from a differential application of work or disciplinary rules; she offers only conclusory allegations that Huppman treats pregnant bookkeepers differently than other employees. She fails to show that Camden violated its own policy in terminating her. The remainder of her arguments regarding pregnancy discrimination

17

are intertwined with her claims of FMLA retaliation and interference, analyzed above. The Court therefore grants summary judgment with the respect to Jirau's PDA claim.

**C. Florida Civil Rights Act**

FCRA makes it "an unlawful employment practice for an employer: (a) to discharge or to fail or refuse to hire any individual, or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." Fla. Stat. § 760.10. "[D]ecisions construing Title VII guide the analysis of claims under the Florida Civil Rights Act." Slater, 2011 WL 4425306, at *1 (quoting Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1389 (11th Cir. 1998)).

In Count III of her Complaint, Jirau asserts that her "job was made disproportionately more difficult because of her gender and [she] was terminated from her Bookkeeper position because of her gender." (Doc. # 1 at ¶ 52). However, Jirau has offered no evidence supporting this claim. In her deposition, she states that her gender discrimination claim is based upon her pregnancy. (Doc. # 53-3 at 12-16). Therefore, the Court finds that the analysis of Jirau's PDA claim covers her FCRA claim as well and grants summary judgment as to Count III of the Complaint.

18

**IV. Conclusion**

The Court has considered all of the evidence in the light most favorable to Jirau as the non-movant. Nevertheless, the Court grants summary judgment in favor of Camden. Jirau has failed to provide direct evidence of FMLA retaliation, and thus was required to establish a prima facie case of retaliation through circumstantial evidence. She did not do so, or demonstrate that Camden's proffered reason for terminating her was a pretext for discrimination. Jirau has also failed to provide evidence of FMLA interference, or pregnancy or gender discrimination.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Camden Development, Inc.'s Motion for Summary Judgment (Doc. # 40) is **GRANTED.**

(2) The Clerk is directed to enter judgment for Defendant and close the case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 30th day of September, 2011.

*[signature]*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record